NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0033n.06
Filed: January 12, 2005

**No. 03-5794**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | **ON APPEAL FROM THE UNITED** |
| | ) | **STATES DISTRICT COURT FOR** |
| v. | ) | **THE WESTERN DISTRICT OF** |
| | ) | **KENTUCKY** |
| JONATHAN CRAIG HAWKINS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN and BATCHELDER, Circuit Judges, and JORDAN, District

Judge[*]

   **LEON JORDAN, District Judge**.  A jury convicted Defendant-Appellant Jonathan

Craig Hawkins ("Hawkins") of manufacturing marijuana, possession of ephedrine with intent

to manufacture a controlled substance, and possession of a firearm in furtherance of a drug

trafficking crime.  The district court subsequently ordered forfeiture of the subject firearms.

Hawkins appeals from his conviction. For the reasons that follow, we **AFFIRM**.

---

   [*] The Honorable Leon Jordan, Senior United States District Judge for the Eastern
District of Tennessee, sitting by designation.

## I. BACKGROUND

On August 28, 2001, Kentucky State Police conducted an aerial observation for marijuana in Caldwell County, Kentucky. Several marijuana plots were spotted near Hawkins's residence. The officers took samples for testing and evidence, and then cut down and destroyed the crops.

In a follow-up investigation on September 2, 2001, officers went to Hawkins's residence. The officers did not have a search warrant. Hawkins was not at home, but his wife was. The officers asked Mrs. Hawkins for her permission to search the property. Mrs. Hawkins stated that she wanted to telephone her husband before consenting. She spoke with Hawkins by telephone, and then gave her signed consent for the officers to search the residence and garage.

The officers first searched inside the house, finding: a marijuana growers' handbook with a leaf of marijuana; drug paraphernalia; methamphetamine residue; and a one-pound package of marijuana seeds and leaves. Trooper Brent White subsequently moved on to search the garage. After finding the side garage door locked, Trooper White asked Mrs. Hawkins for a key. Mrs. Hawkins replied that she did not have a key.

Trooper White entered the garage through the overhead door (which he testified was unlocked) and immediately observed marijuana leaves on the floor. While making certain that the garage was secure, Trooper White noticed additional marijuana plants on a blanket in the bed of a truck. He then returned to the house and brought Mrs. Hawkins to the garage

2

to observe the search. At that point, Mrs. Hawkins commented that she did not know what was in the garage because it was her husband's exclusive domain.

Further search of the garage revealed a loaded rifle and a revolver. The revolver was inside a camouflage bag along with a machete, camouflage hat, flashlight with red lens, elastic band headlamp, canteen, and a blanket with marijuana residue. The search also revealed additional marijuana paraphernalia and guidebooks, along with components of a methamphetamine lab.

Hawkins returned home shortly thereafter. He was immediately *Mirandized* and taken into custody. Trooper White asked Hawkins if he had a key to a locked room within the garage. Hawkins stated that he did not have a key on his person, but he authorized the officers to cut the lock. Within the room, officers found more marijuana and at least one firearm.

At the rear of Hawkins's property, officers found his all-terrain vehicle ("ATV"). The officers' initial overhead observations revealed an ATV path leading from Hawkins's property to the border of the marijuana plots. Attached to Hawkins's ATV was a scabbard. Scabbards are premolded in the shape of a rifle and are designed for carrying guns.

On January 30, 2002, Hawkins filed a Motion to Suppress. He sought suppression of *all* evidence derived from the warrantless search. The issue was subsequently narrowed to only the search of the garage. The district court concluded that Mrs. Hawkins did not have *actual* authority to consent to the garage search, but that she did have apparent authority. The court ruled that "the troopers would have been justified not only in believing that Mrs.

3

Hawkins had authority to consent to the garage search, but also in believing that both Mrs. Hawkins and Mr. Hawkins had given valid consent to the troopers' search of the house and garage." Hawkins's motion was accordingly denied.

The jury returned a guilty verdict on November 13, 2002. On February 10, 2003, the government filed a Motion for Entry of Forfeiture, asking *the court* to enter an order of forfeiture relating to the subject firearms. Hawkins objected, requesting a *jury* determination of the forfeiture count pursuant to Fed. R. Crim. P. 32.2(b)(4). The district court ruled that defendant's request was untimely and entered a preliminary order of forfeiture. The present appeal followed.

## II. ANALYSIS

### A. Standard of Review

Hawkins argues that the district court erred in ruling his jury request untimely under Rule 32.2(b)(4) and in finding that Mrs. Hawkins had at least apparent authority to consent to the garage search. Findings of fact in a suppression hearing are reviewed under the clearly erroneous standard. *United States v. Avery*, 137 F.3d 343, 348 (6th Cir. 1997). Conclusions of law are reviewed de novo. *Id.*

Hawkins also contends that there was insufficient evidence to support a conviction of possession of firearms in furtherance of a drug trafficking crime. Sufficiency of the evidence claims hinge upon whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

4

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

Lastly, Hawkins argues that the prosecution engaged in several instances of misconduct during closing arguments, thereby impacting his constitutional right to a fair trial. "Whether the government's closing argument constitutes prosecutorial misconduct presents a mixed question of law and fact that we review de novo." *United States v. Emuegbunam*, 268 F.3d 377, 403-04 (6th Cir. 2001).

## B. Mrs. Hawkins's Consent

It is well-settled that warrantless searches are per se unreasonable, subject to a limited number of exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). One such exception is a search conducted pursuant to consent. *Id.* Consent may be given by "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974). Moreover, "[e]ven if a third party does not possess actual common authority over the area that was searched, the Fourth Amendment is not violated if the police relied in good faith on a third party's apparent authority to consent to the search." *United States v. Gillis*, 358 F.3d 386, 390 (6th Cir. 2004). The test is whether the officer reasonably could have concluded, from the facts available at the time, that the third party had authority to consent. *Id*. at 390-91.

The facts relevant to Mrs. Hawkins's consent were well-summarized by the district court:

5

. . . . She answered the door when the troopers knocked and did, in fact, live at the residence. She gave no indication that the garage was not hers until after it had been opened and marijuana spotted inside. She signed a consent form that expressly listed the detached garage as one of the areas to be searched, yet made no mention of her limitations with regard to that location. Furthermore, prior to the search, she discussed with her husband the troopers' desire to look around, and he voiced no objection to searching the garage. Instead, he consented to the search, which the troopers heard through his wife's comment "so it's okay to let them look . . . okay." . . . .

Joint Appendix at 34 (footnote omitted).

In light of these facts, Mrs. Hawkins's mere mention of not having a garage key was insufficient to indicate a lack of authority. We accordingly find no error in the district court's conclusion that the officers were reasonable in their reliance on Mrs. Hawkins's apparent authority. *See Gillis*, 358 F.3d at 390-91.

## C. Sufficiency of the Evidence

Hawkins next argues that "the Government failed to provide the jury with any evidence to support the conviction under 18 U.S.C. § 924" (possession of a firearm in furtherance of a drug trafficking crime). To satisfy § 924(c)'s "in furtherance of" language, the government must clearly prove that the subject firearms were possessed to advance or promote the commission of the underlying offense. *United States v. Mackey*, 265 F.3d 457, 461 (6th Cir. 2001). There must be some specific nexus between the firearm and the drug selling operation. *Id.* at 462. The gun "must be strategically located so that it is quickly and easily available for use." *Id.* Additional factors of relevance include "whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id.*

6

The present evidence, viewed "in the light most favorable to the prosecution," showed:

> 1. Five firearms were in Hawkins's garage, at least two of which were loaded, and at least two of which were functional;

> 2. Drugs, manuals, paraphernalia, scales, and components of a meth lab were also found in the garage;

> 3. A revolver, apparently unloaded, was in a camouflaged bag along with marijuana residue and items arguably useful in the nighttime cultivation of marijuana, including a machete, camouflage hat, flashlight with red lens, elastic band headlamp, and canteen;

> 4. ATV tracks led from the rear of Hawkins's property to an area "just parallel" to the marijuana plots; and

> 5. A scabbard was mounted to Hawkins's ATV.

Based on this evidence, a reasonable jury could easily conclude that Hawkins possessed firearms in furtherance of a drug trafficking offense. *See Mackey*, 265 F.3d at 462-63 (Where firearm was loaded, illegally possessed, easily accessible, and located near drugs and drug paraphernalia, a reasonable jury could infer that the purpose of the firearm was to further the drug trafficking offense.). Therefore, Hawkins's conviction on this count must be affirmed.

## D. Rule 32.2(b)(4)

Pursuant to Federal Rule of Criminal Procedure 32.2, "[u]pon a party's request in a case in which a jury returns a verdict of guilty, the jury must determine whether the government has established the requisite nexus between the property and the offense

committed by the defendant." Fed. R. Crim. P. 32.2(b)(4). Hawkins argues that he has the right to have the jury reconvened at any time to make this forfeiture determination. The government counters that Hawkins waived his right by waiting more than three months to make his request. Few reported cases have addressed this issue.

We construe Rule 32.2(b)(4)'s language ("*the* jury must determine . . .") as referring to the *same* jury that "return[ed] a verdict of guilty[.]" *See id.* (emphasis added). The advisory committee's notes to Rule 32.2(b)(4) offer further guidance. "The provision gives the defendant, in all cases where a jury has returned a guilty verdict, the option *of asking that the jury be retained* to hear additional evidence regarding the forfeitability of the property." Fed. R. Crim. P. 32.2(b)(4) advisory committee's notes (emphasis added).

The District Court for the Eastern District of Virginia has relied in part upon the advisory committee's notes in reaching "the sensible conclusion that a party who stands silent while the jury is dismissed following publication of the guilty verdict, as occurred here, waives the right to a jury determination of forfeiture under Rule 32.2(b)(4)." *United States v. Davis*, 177 F. Supp. 2d 470, 483 (E.D. Va. 2001). The Fourth Circuit Court of Appeals affirmed *Davis* on other grounds, expressly "leav[ing] for another day the more difficult question of what, at a minimum, would constitute a sufficient request and when, in the course of the proceedings, such a request would have to be made." *United States v. Davis*, No. 01-4889, 2003 WL 1871050, at *4 (4th Cir. Apr. 14, 2003).

On the facts of the present appeal, we, like the Fourth Circuit in *Davis*, need not reach the question of precisely when a defendant must request jury determination of a forfeiture

8

count. We simply note our conclusion that Rule 32.2(b)(4) granted Hawkins the right to request *retention* of the same jury that "return[ed] a verdict of guilty[.]" Hawkins's argument that Rule 32.2(b)(4) should be read as allowing *reconvening* of the jury is inconsistent with the language of the Rule and its advisory committee's notes - not to mention unreasonable and burdensome upon both courts and jurors. The district court's forfeiture order must accordingly be affirmed.[1]

### E. Prosecutorial Misconduct

Lastly, we have reviewed Hawkins's allegations of prosecutorial misconduct. We conclude that there is no basis for reversal on this ground, particularly in light of the isolated nature of the challenged comments and the overwhelming evidence of Hawkins's guilt. *See Emuegbunam*, 268 F.3d at 404.

### III. CONCLUSION

For the foregoing reasons, the defendant's conviction is affirmed.

---

[1] Hawkins also argues that his Rule 32.2(b)(4) right was prejudiced by the prosecution's failure to move for an order of forfeiture prior to the jury's dismissal. We reject this argument, as Hawkins was well aware that his indictment contained a forfeiture count.